# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Civil Action No. 1:23-cv-02456-DDD-MEH

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

A&A APPLIANCE, INC. d/b/a
APPLIANCE FACTORY OUTLET, INC.,

    Defendant.

## ORDER ON MOTIONS

    Plaintiff Equal Employment Opportunity Commission and Defendant A&A Appliance have both moved for summary judgment and to strike or exclude the testimony of certain experts in an employment-disability dispute. Because Plaintiff cannot make a prima facie case that Defendant was aware of a disability or a request for accommodation, the case fails as a matter of law. Defendant's motion for summary judgment is therefore granted and the expert motions are moot.

## BACKGROUND

    Karima Javanzad was employed by Defendant A&A Appliance, Inc. from February 2019 to June 2020. Doc. 128 at 2; Doc. 140 at 2. In April 2020, Ms. Javanzad requested a twelve-week leave of absence under the Family Medical Leave Act. Doc. 21 at 6; Doc. 140 at 2. The reasons for Ms. Javanzad's request appear to have varied but included either contracting COVID-19 (Doc. 21 at 6), caring for her son with COVID-19 or pneumonia (Doc. 21 at 6; Doc. 131 at 3–4), or ailing from a

- 1 -

gastrointestinal disorder (Doc. 21 at 8). On April 6, 2020, Ms. Javanzad was granted retroactive leave from March 15 to June 7. Doc. 21 at 6; Doc. 129-1 at 2; Doc. 129-6 at 2. Throughout May and early June, Ms. Javanzad communicated with Defendant in a series of emails, phone calls and text messages regarding the details of her leave, when it would expire, and whether her leave could be extended. Doc. 128 at 2; Doc. 140 at 2–3. On June 10, Defendant sent a letter to Ms. Javanzad informing her that she was terminated for failing to return to work following the expiration of her FMLA leave. Doc. 128 at 2; Doc. 140 at 3; Doc. 129-6 at 2–3. The letter also stated that though Defendant provided Ms. Javanzad an opportunity to extend her leave "if the triggering condition for FMLA was extended by [her] medical provider," it could not grant her additional leave for her gastrointestinal disorder, which was unrelated to COVID-19. Doc. 128 at 2; Doc. 140 at 3.

In response to Defendant's termination, in December 2020 Ms. Javanzad filed a charge with Plaintiff stating Defendant discriminated against her based on her disability and in retaliation for requesting a reasonable accommodation. Doc. 128 at 3; Doc. 140 at 3. After investigating the charge, Plaintiff sent Defendant a Letter of Determination stating it found reasonable cause to believe Defendant discriminated against Ms. Javanzad because of her disabilities and inviting it to engage in conciliation. Doc. 128 at 3–4; Doc. 140 at 3–4. When conciliation between the parties failed, Plaintiff filed the current action against Defendant alleging violations of the Americans with Disabilities Act, including failing to accommodate her disabilities, terminating her because of her disabilities (disparate treatment), and retaliating against her after she requested reasonable accommodations. Doc. 21 at 8–12. Following discovery, Plaintiff moved for partial summary judgment on twelve of Defendant's affirmative defenses, Doc. 128, while Defendant moved for summary judgment on all of Plaintiff's ADA claims. Doc. 131.

## LEGAL STANDARD

A district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if it could affect the outcome of the suit under the governing law, and a factual dispute is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Id.* If a reasonable juror could not return a verdict for the nonmoving party, summary judgment is proper, and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In deciding whether the moving party has carried its burden, courts do not weigh the evidence and instead must view it and draw all reasonable inferences from it in the light most favorable to the nonmoving party. *Adamson*, 514 F.3d at 1145; *Scott v. Harris*, 550 U.S. 372, 378 (2007). But a nonmovant's unsupported conclusory allegations or mere traces of evidence are not sufficient to demonstrate a genuine factual dispute. *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1291 (D. Colo. 2009); *Scott*, 550 U.S. at 380 ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").

## DISCUSSION

### I.  Defendant's Motion for Summary Judgment (Doc. 131)

Defendant moves for summary judgment on all of Plaintiff's claims arguing there is no evidence Ms. Javanzad had a qualifying disability under the ADA, that she never provided notice of or requested a

- 3 -

reasonable accommodation, and that her termination came in response to her choosing not to return to work. Doc. 131 at 9–11, 13–16, 18–19. Plaintiff contends summary judgment is not appropriate because disputes of material fact exist for each of its claims. Doc. 142 at 15, 20, 24. I agree with Defendant.

Plaintiff's first claim contends Defendant discriminated against Ms. Javanzad in violation of the ADA by failing to accommodate her disability. An employer violates the ADA by failing to make reasonable accommodations to the known physical or mental disabilities of an otherwise qualified individual with a disability, unless such accommodations would pose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A); *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017). Unlike a disparate-treatment claim, a failure-to-accommodate claim does not require proof of discriminatory animus—any failure to provide reasonable accommodations to an otherwise-qualified individual will be sufficient. *Id.* at 1048.

Under the Tenth Circuit's modified[1] burden-shifting framework for a failure-to-accommodate claim, an employee must first make a prima facie case that she (1) is disabled, (2) is otherwise qualified, and (3)

---

[1] The usual *McDonnell Douglas* framework is inapplicable to a failure-to-accommodate claim because "Congress has already determined that a failure to offer a reasonable accommodation to an otherwise qualified disabled employee *is* unlawful discrimination," and so a court does not need "to probe the subjective intent of the employer." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1178 n. 12 (10th Cir. 1999) (en banc) (emphasis in original). Accordingly, the Tenth Circuit has adopted a modified burden-shifting framework to assess such claims, not to decide what inferences the jury can draw about an employer's intent, as in a typical *McDonnell Douglas* case, but "to provide a useful structure by which the district court, when considering a motion for summary judgment, can determine whether the various parties have advanced sufficient evidence to meet their respective traditional burdens to prove or disprove the reasonableness of the accommodations offered or not offered." *Id.*

requested a plausibly reasonable accommodation. *Punt*, 862 F.3d at 1050. "Once the employee produces evidence sufficient to make a facial showing on ... her prima facie case, the burden of production shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Smith*, 180 F.3d at 1179. "If the employer does either of the above, summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitates any challenged elements of ... her prima face case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Id*.

To succeed on its failure-to-accommodate claim, therefore, Plaintiff must present evidence that Ms. Javanzad requested an accommodation based on a disability. *See Edmonds-Radford v. Southwest Airlines, Co.*, 17 F.4th 975, 992 (2021) (citing *Punt*, 862 F.3d at 1048 ("The employer must of course know of the employee's disability and of the accommodation the employee wishes to receive in order to have any responsibility for providing such an accommodation.")). Plaintiff has not met this burden.

Neither party disputes the below facts:

- Ms. Javanzad requested leave from work on March 17, 2020 due to her son's illness. Doc. 131 at 2–3; Doc. 142 at 1.
- While on leave to care for her son, Ms. Javanzad also became sick and suspected she had contracted COVID-19. She informed Defendant on March 26 and 30 that she went to the emergency room several times but no tests for COVID-19 were available. Doc. 131-6 at 5.
- On April 5, Ms. Javanzad submitted paperwork to Defendant requesting FMLA leave based on her suspicion of contracting

- 5 -

COVID-19. Doc. 131-10 at 4.

- On April 6, 2020, Ms. Javanzad was granted retroactive leave from March 15 to June 7. Doc. 21 at 6; Doc. 129-1 at 2; Doc. 129-6 at 2.

- On April 17, Ms. Javanzad emailed Defendant a note from her primary care provider stating she "may return to full duty immediately with no restrictions." 131-14 at 2–3.

- On April 19, Ms. Javanzad emailed Defendant to say she could not return to work as planned due to childcare issues. Doc. 131-6 at 2.

- On April 21, Ms. Javanzad applied for unemployment benefits, stating she did not have a disability, her leave of absence was not due to her health, but also noting she and her family had COVID-19. 131-17 at 6, 8.

- On April 21, Ms. Javanzad informed Defendant she would return to work on May 11. Defendant noted that her leave would extend until May 22. Doc. 131-19 at 2.

- On May 12, Ms. Javanzad informed Defendant she was not feeling well and that her doctor scheduled an endoscopy the following week. She also asked how much FMLA leave she had remaining and "if I used the whole 12 weeks can I extend it?" Doc. 131-21 at 2.

- On May 12, Ms. Javanzad asked her primary care physician to draft a note to excuse her from work because she "still [didn't] feel good," *see* Doc. 131-22 at 6, which was completed the following day. Doc. 131-24 at 3. This note was not given to Defendant until June 1. Doc. 131-24 at 2–3.

- On May 18, Ms. Javanzad asked her primary care physician to complete a Medical Statement that included, among other information, an affirmation that she was able to return to work so she could "continue receiving unemployment." Doc. 131-11 at 22.

- On June 1, in response to inquires from Defendant, Ms. Javanzad emailed her doctor's note to Defendant for the first time, stated her endoscopy was scheduled June 9 (the day after her expected return to work), and asked "if the FMLA is over and I needed more time, what's my options?" Doc. 131-24 at 2.

- On June 2, 4, 5, Defendant called and texted Ms. Javanzad requesting a return call. Doc. 131 at 6; Doc. 142 at 4–5.

- On June 2, Defendant provided her May 13 doctor's note to the Colorado Department of Unemployment and stated she did not

- 6 -

> "have any [work] restrictions" but noting her difficulty breathing due to COVID and that she had to attend an endoscopy on June 9. Doc. 142 at 4–5.

- On June 8, Ms. Javanzad did not return to work as expected and instead emailed Defendant asking "if I can go on leave of absence since today is the last day for the FMLA." Doc. 131-29 at 2.

- On June 9, Defendant informed Ms. Javanzad by email that she had exhausted her FMLA leave and requested that she call to discuss her held-open position. *Id.*

- Ms. Javanzad did not respond to Defendant's June 9 email. Doc. 131 at 7; 142 at 5.

- Prior to her June 9 endoscopy, Ms. Javanzad was never tested and did not receive confirmation that she contracted COVID-19. Doc. 142 at 6.

- On June 10, Ms. Javanzad was terminated by email with an attached letter for failing to return to work. Doc. 131-30 at 2–4.

Based on the above and Plaintiff's response, it's not clear if Ms. Javanzad's disability was COVID-19 (Doc. 142 at 10, 11, 13), vocal cord paralysis (Doc. 142 at 10, 12, 13), or gastritis (Doc. 142 at 7). Given the lack of a formal diagnosis until after she was terminated (June 17—gastritis, *see* Doc. 131-23 at 14) and Ms. Javanzad's inconsistent representations regarding her ability to return to work, *see supra*, Defendant cannot be found to have been on notice of a disability that required accommodation under the ADA. *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1196 (10th Cir. 2007) ("when an individual's disability is not obvious, the individual must inform its employer of the disability before the employer can be held liable under the ADA for failing to provide a reasonable accommodation"); *see also Nguyen v. City & Cnty. of Denver*, 286 F. Supp. 3d 1168, 1184 (D. Colo. 2017) (same); *see also Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 844 (6th Cir. 1996) (explaining that if the plaintiff presented no evidence to contradict that the employer was unaware of a disability and if the disability was not diagnosed until after termination, a prima

facie case of discrimination cannot be made).

But even assuming Ms. Javanzad was disabled by contracting COVID-19, Plaintiff still fails to make a prima facie case for failure to accommodate. "[B]efore an employer's duty to provide reasonable accommodations ... is triggered under the ADA, the employee must make an adequate request," making clear that she wants assistance for her disability." *E.E.O.C. v. C.R. England*, 644 F.3d 1028, 1049 (10th Cir. 2011); *see also Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) ("An accommodation is something concrete—some specific action required of the employer."). "The request for accommodation must be sufficiently direct and specific, giving notice that [the employee] needs a special accommodation." *C.R. England*, 644 F.3d at 1049 (internal quotation marks omitted). Ms. Javanzad never made an explicit request for an accommodation from Defendant—even for an additional leave of absence—until after her FMLA leave expired. *See* Doc. 131-29 at 2. Also, Ms. Javanzad's inquiries about her remaining leave time and options following FMLA leave expiration were insufficient to establish a recognized accommodation request. *See* Doc. 131-21 at 2; Doc. 131-24 at 2; *C.R. England, Inc.*, 644 F.3d at 1049 (affirming summary judgment for employer and explaining "the employer must know of both the disability and the employee's desire for accommodations for that disability"); *Punt*, 862 F.3d at 1050 (same); *see also Edmonds-Radford*, 17 F.4th 975, 992–93 (10th Cir. 2021) (affirming summary judgment for employer on the ground that a request for more training was an insufficient request for accommodation because "she must have also informed [her employer] that the request [] was made to accommodate a disability."). And Ms. Javanzad never provided Defendant any details about her expected leave of absence or when it might conclude. Though a request for leave may be a reasonable accommodation under the ADA, such a request is not reasonable "unless the employee provides an expected duration of

her impairment." *Freeman v. City of Cheyenne,* No. 23-8022, 2024 WL 464069, at *5 (10th Cir. Feb. 7, 2024) (affirming summary judgment for employer where employee requested additional leave after her FMLA but failed to provide the expected duration of her impairment); *see also Cassie v. City & Cnty. of Denver,* No. 20-CV-02952-MEH, 2023 WL 5507788, at *23–24 (D. Colo. 2023) (expected duration is necessary to "determine whether an employee will be able to perform the essential functions of the job in the near future and therefore whether the leave request is a 'reasonable' accommodation"); *Punt v. Kelly Servs.,* No. 14-CV-02560-CMA-MJW, 2016 WL 67654, at *9 (D. Colo. 2016) (employee "failed to state how far into the future her treatment would last, how much time away from work any radiation session would take, and how much time, if any, the additional appointments and tests may take").

Plaintiff's second and third claims (disparate treatment and retaliation) fail for the same reasons. To survive summary judgment on an ADA disparate treatment claim, a plaintiff must raise genuine issues of material fact regarding whether she (1) had a disability; (2) was otherwise qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (3) was fired because of her disability. *Hawkins v. Schwan's Home Serv., Inc.,* 778 F.3d 877, 883 (10th Cir. 2015). As discussed above, Plaintiff cannot show Ms. Javanzad put Defendant on notice of a disability that required accommodation under the ADA. *See Edmonds-Radford,* 17 F.4th at 992 (affirming summary judgment on disparate treatment claim because decision-making employers had no knowledge of employee's disability before terminating her).

Regarding Plaintiff's retaliation claim, as with its other claims, it is Plaintiff's burden to establish a prima facie case. *Foster v. Mountain Coal Co.,* 830 F.3d 1178, 1186 (10th Cir. 2016). To do so, Plaintiff must

prove (1) Ms. Javanzad was engaged in a protected activity, (2) she was subjected to an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action. *Id.* at 1187. To qualify as protected activity, "a plaintiff must show an adequate request for an accommodation." *Winston v. Ross*, 725 F. App'x 659, 664 (10th Cir. 2018) (citing *Foster*, 830 F.3d at 1187). As noted above, Plaintiff has not provided sufficient evidence to allow a reasonable juror to conclude that Ms. Javanzad made a disability-based accommodation request. While there is no doubt Defendant knew Ms. Javanzad had health issues[2], "it is not the employer's responsibility to anticipate the employee's needs and affirmatively offer accommodation" if an employee does not make known her disability and request assistance. *Dinse*, 541 Fed.Appx. at 890 (citing *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 745 (10th Cir. 2013)). This necessarily dooms Plaintiff's retaliation claim so it fails as a matter of law.[3]

## II. Expert Motions (Docs. 102, 103, 104, 133)

The parties' motions to strike and exclude testimony from disclosed experts relate exclusively to the nature of Ms. Javanzad's disability and

---

[2] Plaintiff contends this evidence creates a genuine issue of material fact regarding Defendant's notice of a disability. *See* Doc. 142 at 15–21. But that is conclusory and against established law, *viz.*, that Ms. Javanzad's inquiries into her options for additional leave qualify as a request for a disability-related accommodation under the ADA. *See Dinse v. Carlisle Foodservice Prods. Inc.*, 541 Fed.Appx. 885, 890 (10th Cir. 2013) ("it is the request *for an accommodation* for an employee's disability that triggers an employer's duty to engage in the interactive process, not an awareness of a disability that may (or may not) necessitate an accommodation." (emphasis in original)).

[3] Since all of Plaintiff's claims fail as a matter of law, its partial motion for summary judgment regarding Defendant's affirmative defenses is moot. Also, Plaintiff's motion for leave to file a surreply in opposition to Defendant's motion for summary judgment, Doc. 161, is granted, and I have considered it.

when she could have returned to work, not whether Ms. Javanzad communicated a disability or a request for accommodation to Defendant. The expert testimony, then, does not bear on the dispositive issue in the case. *See supra* at I. Accordingly, the parties' expert motions are moot.

## CONCLUSION

It is ORDERED that:

Defendant's Motion for Summary Judgment, **Doc. 131**, is **granted**;

Plaintiff's Motion for Partial Summary Judgment, **Doc. 128**, is **moot**;

Plaintiff's Motion for Leave to File a Surreply, **Doc. 161**, is **granted**;

Defendant's Motion to Strike, **Doc. 133**, is **moot**;

Plaintiff's Motion to Exclude Testimony, **Doc. 102**, is **moot**;

Defendant's Motion to Exclude Testimony, **Doc. 103**, is **moot**;

Defendant's Motion to Exclude Testimony, **Doc. 104**, is **moot**; and

the Clerk of Court is directed to close this case.

DATED: September 3, 2025          BY THE COURT:

~~Daniel~~ D. Domenico
United States District Judge